IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NORTH CAROLINA DIVISION OF SONS )
OF CONFEDERATE VETERANS, INC., )
                                )
Plaintiff,                      )
                                )
    v.                          )        1:21CV296
                                )
NORTH CAROLINA DEPARTMENT OF    )
TRANSPORTATION, J. ERIC         )
BOYETTE, in his official        )
capacity as SECRETARY OF        )
TRANSPORTATION OF THE STATE OF  )
NORTH CAROLINA, NORTH CAROLINA  )
DIVISION OF MOTOR VEHICLES,     )
and TORRE JESSUP, in his        )
official capacity as            )
COMMISSIONER OF MOTOR VEHICLES  )
OF THE STATE OF NORTH CAROLINA, )
                                )
          Defendants.           )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Presently before the court is a Motion to Dismiss in Lieu
of an Answer filed by Defendants North Carolina Department of
Transportation, North Carolina Division of Motor Vehicles, J.
Eric Boyette (in his official capacity as Secretary of the North
Carolina Department of Transportation), and Torre Jessup, (in
his official capacity as Commissioner of North Carolina Division

of Motor Vehicles) (together, "Defendants"). (Doc. 8.)[1] The North
Carolina Division of Sons of Confederate Veterans, Inc.
("Plaintiff") responded in opposition. (Doc. 10.) Defendants
replied. (Doc. 15.) Plaintiff then filed a Motion for Stay of
Proceedings, (Doc. 18), which Defendants opposed, (Doc. 21).

For the reasons set forth herein, this court will grant
Defendants' motion to dismiss and deny Plaintiff's stay motion.

## I.   **FACTUAL BACKGROUND**

On a motion to dismiss, a court must "accept as true all of
the factual allegations contained in the complaint." King v.
Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016). The facts, taken
in the light most favorable to Plaintiff, are as follows.

Plaintiff is a nonprofit corporation organized under North
Carolina law and is affiliated with the Sons of Confederate
Veterans, Inc. ("SCV"). (Compl. (Doc. 5) ¶ 1.) Plaintiff's
insignia "is a representation of the Confederate Battle Flag
flanked on the left, top, and right sides by the words 'SONS OF
CONFEDERATE VETERANS,' and on the bottom side by the year

---

[1] All citations in this Memorandum Opinion and Order to
documents filed with the court refer to the page numbers located
at the bottom right-hand corner of the documents as they appear
on CM/ECF.

'1896,'" (id. ¶ 21), the year in which SCV was founded, (id. ¶ 9).[2]

North Carolina's Department of Transportation ("NCDOT"), through the Division of Motor Vehicles ("DMV"), issues specialty license plates[3] that "set aside" a "designated segment of the plate" to feature the emblems of nationally recognized civic organizations. (Id. ¶¶ 24—25 (quoting N.C. Gen. Stat. § 20-79.4(a3), (b)(44)).) As part of this program, Plaintiff's members "have held and renewed special commemorative license plates identifying them as members of the SCV" via the featuring of the organization's insignia on their North Carolina license plates. (Id. ¶ 26.) But, beginning in July 2020, the DMV started withholding "the shipment of the specialty plates to SCV members." (Id. ¶ 29.) In response, Plaintiff and its members "made numerous and varied efforts to engage with Defendants regarding this matter, via telephone calls, emails, and visits

_____

[2] This court notes that Plaintiff's insignia was attached to the Complaint as an exhibit. (Compl. (Doc. 5) at 14.) It and other exhibits attached to Plaintiff's Complaint, (see id. at 12—19), may be considered in adjudicating Defendants' motion to dismiss. Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016) (stating that at the Rule 12(b)(6) stage courts may "consider documents that are . . . attached to the complaint as exhibits").

[3] These plates, like all license plates issued by the DMV, "remain the property of the State[.]" N.C. Gen. Stat. § 20-63(a).

- 3 -

to DMV offices." (Id.) Eventually, the plates were released in December 2020. (Id.)

However, effective January 1, 2021, Defendants decided to "no longer issue or renew specialty license plates bearing the Confederate battle flag or any variation of that flag." (Id. at 15.) Plaintiff was informed of this decision in a January 11, 2021 letter from NCDOT which states that the "DMV will either issue SCV members standard plates and refund any specialty-plate fees paid or provide them with different specialty plates." (Id. at 16.) The letter justifies this decision on grounds that "specialty license plates constitute government speech[,]" and "license plates bearing the Confederate battle flag have the potential to offend those who view them." (Id. at 15.) The letter also notes that the DMV "will continue to recognize [Plaintiff] as a civic organization entitled to the issuance of a specialty plate[,]" and accordingly the "DMV remains open to considering alternative artwork" for Plaintiff's specialty plate that "does not contain the Confederate battle flag." (Id.)

## II. **PROCEDURAL HISTORY**

On March 8, 2021, Plaintiff filed its Complaint in Lee County Superior Court against Defendants. (Compl. (Doc. 5).) The Complaint asserts (1) a 42 U.S.C. § 1983 claim, (2) a preliminary and permanent injunction claim, (3) a declaratory

- 4 -

judgment claim, and (4) an attorney fees claim. (Id. ¶¶ 35—59.) On April 8, 2021, Defendants filed a petition with this court to remove the case from state to federal court on federal question and supplemental jurisdiction grounds. (Doc. 1.) On May 6, 2021, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), (Doc. 8), along with an accompanying memorandum, (Defs.' Mem. of Law in Supp. of Mot. to Dismiss in Lieu of Answer ("Defs.' Br.") (Doc. 9)). Plaintiff responded in opposition. (Br. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Br.") (Doc. 10).) Defendants replied. (Doc. 15.) Additionally, pursuant to an order of this court, (Doc. 16), Plaintiff filed a supplemental memorandum, (Doc. 17).

Subsequently, on December 29, 2021, Plaintiff filed a motion to stay this court's proceedings, (Doc. 18), accompanied by a supporting memorandum, (Mem. of Law in Supp. of Mot. for Stay of Proceedings ("Pl.'s Stay Br.") (Doc. 19)). Defendants responded in opposition, (Defs.' Opp'n to Pl.'s Mot. for Stay. ("Defs.' Stay Br.") (Doc. 21)), and Plaintiff replied, (Doc. 22).

Both Defendants' motion to dismiss and Plaintiff's motion for stay are now ripe for adjudication.

III. **ANALYSIS**

This court will grant Defendants' motion to dismiss and deny Plaintiff's stay motion. Plaintiff's stay motion will be addressed first.

A. **Motion for Stay**

Plaintiff has filed a motion to stay this court's proceedings until the Supreme Court issues a decision in Shurtleff v. City of Boston. (Doc. 18.) In that case, Boston denied the plaintiffs' application to fly a "Christian flag" on a flagpole in front of Boston City Hall, which has historically been available for the display of flags other than those of the United States, Massachusetts, and Boston. Shurtleff v. City of Bos., 986 F.3d 78, 82—85 (1st Cir. 2021). The plaintiffs claimed their First Amendment rights had been violated and sued Boston and a city official. Id.

The First Circuit affirmed a ruling in favor of the defendants, holding that the "display of third-party flags on the City Hall flagpole constitutes government speech, not subject to most First Amendment restrictions." Id. at 85, 94. In its decision, the First Circuit applied a three-factor analysis that the Supreme Court has used to determine whether speech constitutes government speech. Id. at 86—94. One of the cases in which the Supreme Court has articulated that analysis is Walker

- 6 -

v. Texas Division, Sons of Confederate Veterans, Inc., a 2015
license plate case with strikingly similar facts to the instant
case. 576 U.S. 200 (2015) (rejecting a First Amendment claim
challenging Texas' denial of the Texas Division of the Sons of
Confederate Veterans' request for a specialty license plate
featuring the organization's insignia).

After losing at the First Circuit, the Shurtleff
plaintiffs' writ of certiorari was accepted by the Supreme
Court. 142 S. Ct. 55 (2021). The Court heard arguments on
January 18, 2022. Docket Sheet, Shurtleff v. City of Bos.,
(No. 20-1158), https://www.supremecourt.gov/search.aspx?
filename=/docket/docketfiles/html/public/20-1800.html. A
decision can be expected sometime before the Court ends its
current term in late June 2022.

Plaintiff argues that this court's proceedings should be
stayed until the Supreme Court decides Shurtleff because that
case "implicates the government speech and public forum
doctrines of First Amendment jurisprudence, both of which are
involved in the case now before this court on Defendants' motion
to dismiss." (Pl.'s Stay Br. (Doc. 19) at 4.) Therefore,
Plaintiff "contends that the interests of justice and judicial
economy will be served by entering an order staying all

- 7 -

proceedings in this matter pending a decision by the Supreme Court." (Id.)

Defendants disagree. (Defs.' Stay Br. (Doc. 21) at 1.) They argue that judicial economy will not be served by waiting for the Court's Shurtleff opinion because that decision is highly unlikely to impact the instant case. (Id.) Defendants claim that this is because "the Shurtleff petitioners have not asked the Court to modify the test for identifying government speech. Instead, the Shurtleff petitioners have simply asked the Supreme Court to apply the now-settled Walker test in a new factual context." (Id. at 3.) Defendants thus conclude that "while Shurtleff will doubtlessly provide new guidance with respect to flags, it is unlikely to provide any new guidance with respect to license plates" given that the Court already addressed license plates and the government speech doctrine in Walker. (Id.)

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). "The grant or denial of a request to stay proceedings calls for an exercise of the district court's judgment 'to balance the various factors relevant to the

- 8 -

expeditious and comprehensive disposition of the causes of action on the court's docket.'" Maryland v. Universal Elections, Inc., 729 F.3d 370, 375 (4th Cir. 2013) (quoting United States v. Ga. Pac. Corp., 562 F.2d 294, 296 (4th Cir. 1977)). Specifically, there are three main "[f]actors courts consider in deciding whether to exercise their discretion to stay proceedings." Common Cause v. Rucho, Nos. 1:16-CV-1026, 1:16-CV-1164, 2017 WL 3981300, at *3 (M.D.N.C. Sept. 8, 2017). They are "[1] the interests of judicial economy, [2] the hardship and inequity to the moving party in the absence of a stay, and [3] the potential prejudice to the non-moving party in the event of a stay." Yadkin Riverkeeper, Inc. v. Duke Energy Carolinas, LLC, 141 F. Supp. 3d 428, 452 (M.D.N.C. 2015). The moving party must establish that the first and second factors constitute "clear and convincing circumstances outweighing" the third factor. Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 127 (4th Cir. 1983).

Here, the first two factors—judicial economy and hardship to the moving party—fail to establish that clear and convincing circumstances warrant a stay. Accordingly, Plaintiff has failed to discharge its burden to show that those factors outweigh the

- 9 -

third factor, prejudice to the non-moving party.[4] In Rucho, a political gerrymandering case, a three-judge panel denied a motion to stay proceedings. 2017 WL 3981300, at *8. The motion had requested that the case be placed in abeyance until the Supreme Court decided Gill v. Whitford, another political gerrymandering case. Id. at *2—3. The Rucho panel reasoned that because the Supreme Court case differed significantly from the case before it, waiting for Whitford to be decided could prove futile since there was "a distinct possibility" it would provide "no additional guidance as to how to resolve Plaintiffs' claims." Id. at *6. Thus, the Rucho panel held, inter alia, that "[i]n light of the numerous . . . factual differences between Whitford and the instant case, staying these proceedings will, at most, minimally advance the interests of judicial economy and preventing hardship to [the moving party]." Id.

So too here. The factual distinctions between the instant case and Shurtleff are stark. This case involves license plates.

_____

[4] However, this court notes that Defendants have failed to articulate any concrete prejudice they will face if this case is stayed. Instead, Defendants broadly assert that they and "the citizenry of North Carolina have a clear interest in the expeditious and final resolution of this important constitutional issue." (Defs.' Stay Br. (Doc. 21) at 4 n.1.) While that may be so, it is not specific enough to constitute cognizable prejudice. But because this court finds that Plaintiff has failed to establish that the first two factors constitute clear and convincing circumstances warranting a stay, it is ultimately immaterial that Defendants have not shown in any tangible way that they will be prejudiced by a stay.

- 10 -

_Shurtleff_ involves flags. That distinction is meaningful because the _Shurtleff_ petitioners have not fundamentally challenged the three-factor government speech analysis' framework, see Br. for Pet'rs, No. 20-1158 (2021) (arguing that the First Circuit applied the three factors too rigidly), which _Walker_ already applied to license plates. Accordingly, the instant case seems to be squarely governed by _Walker_. While _Shurtleff_ may clarify the government speech doctrine in some circumstances, there is at least a "distinct possibility" that the thrust of the opinion will simply apply the doctrine to a novel factual context and consequently provide "no additional guidance as to how to resolve Plaintiff['s] claims." _Rucho_, 2017 WL 3981300, at *6. If so, judicial economy would not be served by waiting for _Shurtleff_'s publication nor would Plaintiff be harmed by this case proceeding in advance of it. As stated by the _Rucho_ panel, "[i]t makes little sense 'to delay consideration of this case . . . waiting for a decision that may not ultimately affect it.'" _Id._ (quoting _Ga. State Conf. of NAACP v. Georgia_, 269 F. Supp. 3d 1266, 1283 (N.D. Ga. 2017)).

Thus, this court will deny Plaintiff's stay motion because Plaintiff has failed to establish that judicial economy and the hardship it will suffer in the absence of a stay (factors one

and two) constitute clear and convincing circumstances justifying staying this court's proceedings.

**B.   Motion to Dismiss**

This court will now address Defendants' motion to dismiss. "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." Id. When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. Id. Further, this court liberally construes "the complaint, including all reasonable inferences therefrom . . . in the plaintiff's favor." Est. of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004). This court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

Plaintiff asserts a 42 U.S.C. § 1983 claim on grounds that "its rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution have been abridged and denied under color of state law by Defendants." (Compl. (Doc. 5) ¶ 42.) Each alleged constitutional violation is addressed in turn below. As will be explained, Plaintiff has failed to plead sufficient facts to allege a plausible § 1983 claim on any of these constitutional grounds. Thus, this court will dismiss the claim as well as Plaintiff's related claims for injunctive relief, declaratory judgment, and attorney fees. (Id. ¶¶ 35—59).

### 1. <u>Free Speech Allegations</u>

Plaintiff claims its First Amendment free speech rights have been violated because "Defendants seek to bar Plaintiff [] and its members from expressing their viewpoint while allowing other groups to express their viewpoint without restriction[.]" (Id. ¶ 37.) Defendants urge dismissal of this claim "because specialty license plates issued by North Carolina are government speech, and [thus] the State's denial of a specialty license plate bearing the confederate battle flag is not subject to First Amendment scrutiny." (Defs.' Br. (Doc. 9) at 6.) Defendants insist the conclusion that North Carolina specialty license plates are government speech is required by binding and

- 13 -

controlling case law—namely Walker, 576 U.S. 200, and ACLU v. Tennyson, 815 F.3d 183 (4th Cir. 2016). (Id. at 6-9.)

In Walker, the Supreme Court denied a First Amendment free speech claim challenging Texas' rejection of the Texas Division of the Sons of Confederate Veterans' request for a specialty license plate featuring the organization's insignia.[5] 576 U.S. at 219. Walker held that the content on Texas specialty license plates is not private speech in a public forum with attendant First Amendment protections but rather government speech entirely outside the purview of the Free Speech Clause. Id. Thus, Texas "was consequently entitled to refuse to issue plates featuring SCV's" logo without fear of infringing any private entity or individual's free speech rights. Id. at 219—20. In its analysis, the Court applied three factors to Texas' specialty license plates to determine whether they were government speech: (1) the history of using license plates to communicate messages to the public; (2) the extent in which license plate designs are identified in the public mind with government; and (3) the degree of control the state maintains over the message on specialty plates. Id. at 210-13 (citing Pleasant Grove City v.

---

[5] The Texas Division of the Sons of Confederate Veterans uses the same insignia as Plaintiff. Compare Walker, 576 U.S. at 220, with (Compl. (Doc. 5) at 14).

Summum, 555 U.S. 460, 472 (2009)). All three factors indicated the specialty plates were government speech. Id.

In Tennyson, the Fourth Circuit applied Walker to North Carolina's specialty license program, which it described as "substantively indistinguishable" from Texas' specialty license plate program. 815 F.3d at 185. The Fourth Circuit held that "specialty license plates issued under North Carolina's program amount to government speech and that North Carolina is therefore free to reject license plate designs that convey messages with which it disagrees." Id. (citing Walker, 576 U.S. at 207).

Plaintiff strives to distinguish Walker and Tennyson from the instant case. Plaintiff insists that Walker "does not control the outcome of [the] present case because of significant factual and legal distinctions." (Pl.'s Br. (Doc. 10) at 10.) Plaintiff argues that unlike North Carolina's specialty license plate program, the statutes underpinning Texas' program are "permeated with discretion." (Id. at 11.) Plaintiff stresses that those statutes allow Texas to "refuse to create a new specialty license plate for a number of reasons, for example if the design might be offensive to any member of the public." (Id. (internal quotation marks omitted) (quoting Tex. Transp. Code Ann. § 504.801(c)).) In contrast, Plaintiff maintains that the statutes governing North Carolina's program do not confer the

- 15 -

State any discretion to deny a qualifying civic organization its
requested plate design, so long as that design does "not
obstruct the license plate number or render it unreadable."
(Id.)

Plaintiff similarly tries to distinguish Tennyson, arguing
that because the plate at issue was not a civic club plate—it
was a "pro-choice" plate unaffiliated with any particular
organization—the case has "nothing to do with the precise facts
and statutory language involved in the case at bar[.]" (Id.)
Moreover, Plaintiff argues that Tennyson's holding did not
account for the North Carolina Court of Appeal's "language [in]
Faulkner that whether the Confederate Battle Flag should be
displayed on state-issued license plates is a question of public
policy reserved to the [State's] General Assembly." (Id. at 12
(referencing N.C. Div. of Sons of Confederate Veterans v.
Faulkner, 131 N.C. App. 775, 509 S.E.2d 207 (1998), which held
that Plaintiff qualifies as a civic club for purposes of North
Carolina's specialty license plate statute).)

This court is unpersuaded by Plaintiff's attempts to
distinguish Walker and Tennyson from the instant case. As to
Tennyson, the Fourth Circuit's language in its holding was
categorical and not contingent on the type of specialty plate at
issue. 815 F.3d at 185. The Fourth Circuit stated, "we now

- 16 -

conclude that specialty license plates issued under North
Carolina's program amount to government speech and that North
Carolina is therefore free to reject license plate designs that
convey messages with which it disagrees." Id. Plaintiff offers
no rationale why the mere fact that its license plates are civic
club specialty license plates should exempt it from Tennyson's
plain and unequivocal holding.

Furthermore, Plaintiff's reliance on Faulkner to undermine
Tennyson is misplaced. Faulkner decided a narrow question of
state law: whether Plaintiff qualifies as a civic club for
purposes of the specialty license plate statute. 131 N.C. App.
at 781, 509 S.E.2d at 211. While the North Carolina Court of
Appeals decided Plaintiff did so qualify, that holding has no
bearing on the federal constitutional question of whether
denying Plaintiff a license plate violates the First Amendment's
free speech guarantees. Indeed, the only time Faulkner mentions
the First Amendment—or anything about the Constitution for that
matter—is in a footnote in which it notes that "allowing some
organizations . . . to obtain personalized plates while
disallowing others . . . could implicate the First Amendment's
restriction against content-based restraints on free speech."
Id. at 777 n.1, 509 S.E.2d at 209 n.1. Such speculation by the
North Carolina Court of Appeals in 1998 was decisively rejected

- 17 -

by the Supreme Court in its 2015 Walker decision. Therefore, Faulkner in no way undercuts Tennyson which relied on Walker. Accordingly, Tennyson's holding that North Carolina's specialty license plates are government speech applies here to negate Plaintiff's First Amendment claim.

But even assuming arguendo that Plaintiff was correct that "Tennyson is not controlling[,]" (Pl.'s Br. (Doc. 10) at 12), Plaintiff's free speech would still be controlled by Walker. Plaintiff's attempt to distinguish Walker implicates the third factor for government speech: the degree of control the state has over the message of the speech. See 576 U.S. at 210, 213. In Walker, the Supreme Court found that

> Texas maintains direct control over the messages conveyed on its specialty plates. Texas law provides that the State has sole control over the design, typeface, color, and alphanumeric pattern for all license plates. The [Texas Department of Motor Vehicles] Board must approve every specialty plate design proposal before the design can appear on a Texas plate. And the Board and its predecessor have actively exercised this authority. Texas asserts, and SCV concedes, that the State has rejected at least a dozen proposed designs. Accordingly, Texas has effectively controlled the messages conveyed by exercising final approval authority over their selection. This final approval authority allows Texas to choose how to present itself and its constituency.

Id. (cleaned up). While this language discusses the particulars of the discretion granted to Texas authorities in approving specialty plates, a court in this circuit has held that "[t]here

- 18 -

is no merit to [the] [p]laintiff's contention that Walker is
limited solely to one of Texas's methods of selecting specialty
plate designs. The Supreme Court's decision did not rely on the
method used to select the plate designs[.]" Sons of Confederate
Veterans, Inc. v. Holcomb, No. 7:99-cv-00530, 2015 WL 4662435,
at *3 (W.D. Va. Aug. 6, 2015). Crucially, and persuasively, that
court concluded that "[n]othing in the Supreme Court's decision
suggests that if the method used to select the plate is varied,
the reasoning of the Court's conclusion would be altered." Id.

     The court in that case was applying Walker to Virginia's
specialty license plate program. Id. The plaintiffs, SCV and
SCV's Virginia Division, had made the same argument that
Plaintiff makes here as to why Walker should not apply to
another state's specialty license program. Id. They argued that
unlike Texas, Virginia did "not exercise editorial discretion
over the content of the specialty plate designs, and therefore
the speech remains the speech of the individual." Id. at *4. The
court disagreed, finding that Virginia did "exercise control
over the design of specialty plates[,]" in part because Virginia
law designates Virginia's DMV as the entity "responsible for
designing and issuing specialty plates." Id. The court ruled
that "[t]he fact that the [DMV] Commissioner often adopts the
proposed designs of sponsoring groups in no way undermines the

- 19 -

Commonwealth's authority to design the plates and, thus, speak by adopting the speech of another." Id.

Likewise, North Carolina, via its Division of Motor Vehicles, exercises direct control over the design of specialty license plates. The applicable statutes provide that "[t]he Division shall develop . . . a standardized format for special license plates[,]" and that even after the North Carolina General Assembly approves of a specific specialty license plate proposed by a civic club, "[t]he Division must review the artwork to ensure it complies with the standardized format." N.C. Gen. Stat. §§ 20-79.3A(d)(1), 20-79.4(a3). Like Holcomb, that North Carolina's DMV may "adopt[] the proposed designs of sponsoring groups in no way undermines the [State]'s authority to design the" overall standardized format for the "plates and, thus, speak by adopting the speech of another." 2015 WL 4662435, at *4. Indeed, that North Carolina's DMV "must approve every specialty plate design proposal before the design can appear on a [North Carolina specialty] plate" evinces that the State retains "final approval authority" over the plates' designs. Walker, 576 U.S. at 213. This constitutes sufficient control over the message of the plate's speech. Thus, the third factor for identifying government speech indicates that North Carolina's specialty license plates—including civic club plates—

- 20 -

are government speech and hence immunized from First Amendment scrutiny.

In sum, this court finds that Plaintiff's First Amendment challenge is defeated by Tennyson's categorical language, which held that North Carolina's specialty license program is government speech. And even assuming, arguendo, that Tennyson is not controlling, this court finds that Plaintiff's challenge to the third Walker factor fails because North Carolina does exercise control over the message of specialty license plates. Therefore, this court will grant Defendants' motion to dismiss Plaintiff's § 1983 claim to the extent it asserts a First Amendment free speech violation.[6]

---

[6] Plaintiff brings a separate, but related, claim for relief under North Carolina's Declaratory Judgment Act, N.C. Gen. Stat. § 1-253. (Compl. (Doc. 5) ¶¶ 49—57.) The claim seeks declaratory judgment regarding "the extent and manner of the right to apply for and receive the commemorative license plates" under North Carolina's specialty license plate statutes "as well as regarding the discretion, if any, Defendants have in determining which commemorative license plates it will issue." (Id. ¶ 56.)

(Footnote continued)

## 2. <u>**Due Process Allegations**</u>[7]

Plaintiff claims it and its members have been deprived of "their liberty without due process of law." (Compl. (Doc. 5) ¶ 38.) Although Plaintiff fails to clearly specify, this court assumes that this due process claim is a procedural due process claim. This court makes such an assumption because Plaintiff's brief explicitly acknowledges that it has not pled a substantive due process claim. (Pl.'s Br. (Doc. 10) at 13 ("Given the bare

---

This declaratory judgment claim is mooted by this court's holding that North Carolina's specialty license plate statutory program facilitates government speech, and thus Plaintiff's members are not entitled to receive specialty license plates featuring Plaintiff's insignia. <u>Supra</u> Part III.B.1. This holding resolves the actual controversy regarding the specialty license plate statutes, and thus no further interpretation of those statutes is required. <u>See</u> <u>Lide v. Mears</u>, 231 N.C. 111, 118, 56 S.E.2d 404, 409 (1949) ("[A]n action for a declaratory judgment will lie only in a case in which there is an actual or real existing controversy between parties . . . ."). Therefore, Plaintiff's Declaratory Judgment Act claim will be dismissed. <u>See</u> <u>Calabria v. N.C. State Bd. of Elections</u>, 198 N.C. App. 550, 555, 680 S.E.2d 738. 743 (2009) ("If the issues before a court or administrative body become moot at any time during the course of the proceedings, the usual response should be to dismiss the action because a moot question is not within the scope of our Declaratory Judgment Act." (cleaned up)).

[7] Plaintiff pleads its due process allegations under the Fifth Amendment. (Compl. (Doc. 5) ¶ 38). However, the Fifth Amendment's Due Process Clause applies only to the federal Government. Plaintiff should have pled its due process claim under the Fourteenth Amendment's Due Process Clause which applies to state governments. Because Plaintiff's allegations must be liberally construed at the motion to dismiss stage, <u>Est. of Williams-Moore</u>, 335 F. Supp. 2d at 646, this court will construe Plaintiff's due process allegations as being made pursuant to the Fourteenth Amendment.

- 22 -

allegations in its Complaint, Plaintiff has not asserted facts plausibly giving rise to a substantive due process claim.")[8].)
Defendants urge dismissal of Plaintiff's procedural due process claim on grounds that Plaintiff has failed to allege a recognizable liberty or property interest at issue, and that it has failed to allege "North Carolina provided it with a constitutionally inadequate process prior to denying its license plate application." (Defs.' Br. (Doc. 9) at 15 n.4.)

In light of this court's holding that Plaintiff has no First Amendment rights in relation to North Carolina's specialty license plate program, supra Part III.B.1, this court agrees that Plaintiff's procedural due process claim must fail because there is no recognizable liberty interest at issue. But even assuming arguendo there was a recognizable liberty interest at stake, Plaintiff's procedural due process claim would still fail because the Complaint does not plausibly allege that North Carolina engaged in a constitutionally deficient process in deciding to cease printing license plates featuring the Confederate battle flag. Plaintiff had significant advance notice that a decision to discontinue printing such license plates was under consideration. (See Compl. (Doc. 5) ¶ 29.)

---

[8] This court notes that this sentence appears to be copied verbatim from Defendants' brief. (See Defs.' Br. (Doc. 9) at 16.)

Plaintiff states that "[b]efore filing this action, Plaintiff []
and its members, for over 6 months, made numerous and varied
efforts to engage with Defendants regarding this matter, via
telephone calls, emails, and visits to DMV offices." (Id.) These
entreaties appear to have been heard and considered by
Defendants. (See id. at 15.) NCDOT's letter announcing the
January 2021 decision to cease printing license plates featuring
the Confederate battle flag is addressed to Plaintiff's counsel
and written "in response to [his] letter dated November 2,
2020." (Id.) The NCDOT letter states that prior to the final
decision being made "efforts were made by this administration to
work with [Plaintiff]" to find a mutually agreeable resolution.
(Id.)

Plaintiff has not specified which part of this process it
considers constitutionally inadequate. This court notes that
Plaintiff had notice of the pending decision. (See id. ¶ 29.) It
had the ability to comment on that pending decision. (Id.)
Therefore, Plaintiff's assertion that Defendants engaged in a
"constitutionally inadequate process," (Pl.'s Br. (Doc. 10) at
13), is contrary to the facts in the Complaint and a threadbare
legal conclusion only "supported by mere conclusory statements,"
Iqbal, 556 U.S. at 678. Thus, this court will grant Defendants'

- 24 -

motion to dismiss Plaintiff's § 1983 claim insofar as that claim alleges a due process violation.[9]

### 3. <u>Equal Protection Allegations</u>

Plaintiff claims that it and its members have been denied "equal protection of the law under the Fourteenth Amendment" because its speech has been restricted "in favor of supporting and endorsing the viewpoints of those who oppose any display of the Confederate Battle Flag for any purpose." (Compl. (Doc. 5) ¶ 39.) Defendants seek dismissal of this equal protection claim because Plaintiff "has alleged no facts that would show that it was treated less favorably than other similarly situated applicants for specialty license plates" nor has it sufficiently alleged discriminatory intent or improper motive. (Defs.' Br. (Doc. 9) at 17.)

Plaintiff has failed to allege sufficient facts to constitute a plausible equal protection claim for two reasons.

---

[9] Plaintiff acknowledges that the requirements for a due process claim are identical under the United States and North Carolina Constitutions. (Pl.'s Br. (Doc. 10) at 14 ("[T]o state a due process . . . claim under Article I, Section 19 of the North Carolina Constitution, a plaintiff must make the same factual allegations required to establish a federal constitutional claim." (citing <u>Sheaffer v. Cnty. of Chatham</u>, 337 F. Supp. 2d 709, 731 (M.D.N.C. 2004); <u>Bacon v. Lee</u>, 353 N.C. 696, 720—21, 549 S.E.2d 840, 856 (2001)).) Therefore, to the extent Plaintiff has also alleged a due process violation under North Carolina's Constitution, (<u>see</u> Compl. (Doc. 5) ¶ 55), that claim will likewise be dismissed.

First, "[t]o succeed on an equal protection claim, a plaintiff must . . . demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Here, Plaintiff has failed to establish that it has been treated differently from others similarly situated. Other entities or individuals that want license plates featuring the Confederate battle flag will similarly be unable to receive them under Defendants' policy because the policy facially applies more broadly than to just Plaintiff's insignia. Instead, it applies to any "specialty license plates bearing the Confederate battle flag or any variation of that flag." (Compl. (Doc. 5) at 15.) Additionally, that the "DMV remains open . . . to resuming the issuance of specialty license plates for members of [Plaintiff,]" so long as an alternative license plate design not containing the Confederate battle flag is agreed upon, (id.), suggests that Defendants are not motivated by an improper discriminatory intent against Plaintiff or its members.

Second, the speech cases in which the Supreme Court has found equal protection violations feature public forums. See, e.g., Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n, 460 U.S. 37, 55 (1983); Police Dep't of Chicago v. Mosley, 408 U.S. 92,

96 (1972); <u>Carey v. Brown</u>, 447 U.S. 455, 461 (1980). In
contrast, the license plates at issue here are not public
forums, indeed <u>Walker</u> explains that "forum analysis is
inapposite" in this factual context. 576 U.S. at 217. Rather,
the license plates contain government speech, <u>supra</u> Part
III.B.1, and therefore North Carolina may discriminate against
certain kinds of speech so long as such discrimination can
withstand rational basis review, <u>see</u> <u>Perry</u>, 460 U.S. at 55;
<u>Shurtleff</u>, 986 F.3d at 98 ("In the absence of a public forum—and
we have found none here—the City's practice need only pass
rational basis review. Put another way, the practice need only
bear a rational relationship to some legitimate governmental
purpose." (citation omitted)). Defendants' rationale for
refusing to print license plates featuring the Confederate
battle flag is that those plates "have the potential to offend
those who view them." (Compl. (Doc. 5) at 15.) This is
rationally related to North Carolina's legitimate purpose of
respectfully celebrating the State's diverse communities, and
hence undoubtedly exceeds the low bar of rational basis review.

Therefore, Plaintiff has failed to allege sufficient facts
to state a plausible equal protection violation, and Defendants'
motion to dismiss Plaintiff's § 1983 claim will be granted as to

the equal protection allegations.[10] Further, as the two other constitutional violations underpinning Plaintiff's § 1983 claim also lack plausibility, this court will dismiss the claim in its entirety. Finally, because the § 1983 claim is being dismissed—as is the related declaratory judgment claim, <u>supra</u> note 6—there are no grounds for Plaintiff to seek injunctive relief or attorney fees, (Compl. (Doc. 5) ¶¶ 43—48, 58—59), and thus those claims will also be dismissed.

IV.  <u>CONCLUSION</u>

For the foregoing reasons, **IT IS THEREFORE ORDERED** that Plaintiff's Motion for Stay of Proceedings, (Doc. 18), is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss in Lieu of Answer, (Doc. 8), is hereby **GRANTED** and this action is dismissed. A Judgment dismissing this action will be entered contemporaneously with this Memorandum Opinion and Order.

---

[10] Plaintiff acknowledges that the "North Carolina Supreme Court interprets the state and federal equal protection clauses synonymously." (Pl.'s Br. (Doc. 10) at 14 (citing <u>Frye v. Brunswick Cnty. Bd. of Educ.</u>, 612 F. Supp. 2d 694, 706 (E.D.N.C. 2009)).) Therefore, to the extent Plaintiff has also alleged an equal protection violation under North Carolina's Constitution, (<u>see</u> Compl. (Doc. 5) ¶ 55), that claim will likewise be dismissed.

This the 1st day of March, 2022.

_____
United States District Judge